UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RUSSELL EUGENE BAILEY, JR.,

    Plaintiff,

v.                                     Case No. 1:12-cv-50
                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                     /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on November 21, 1972 (AR 133).[1] He alleged a disability onset date of May 19, 2009 (AR 133). Plaintiff completed the 12th grade and completed special job training in the building trades while in high school (AR 152). He had previous employment as a carpenter, construction worker and window installer (AR 148). Plaintiff identified his disabling conditions as three herniated discs and back problems (AR 147). Plaintiff stated that due to these conditions, he suffers from pain and has a limited ability to sit, stand, walk and drive (AR 147). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 25, 2011 (AR 12-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 19, 2009 and that he met the insured status requirements under the Act through December 31, 2012 (AR 14). Second, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease status post multiple surgeries including decompressive laminectomy May 2009; fusion with redo discectomy December 2009; decompressive laminectomy with partial facetectomy and foraminotomy February 2011; and obesity (AR 14). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). Specifically, the ALJ reviewed Listing 1.04 (Disorders of the spine), and observed that "the record was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation" (AR 15). In this regard, the ALJ noted that plaintiff "was able to walk into the woods and hunt" and "did not require assistive devices to ambulate" (AR 15).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he would need the option to sit or stand at will. He could sit for 15-20 minutes at one time. He could stand/walk for 30 minutes at one time. He could occasionally climb ramps and stairs. He could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, crouch, crawl, and kneel. He needed to avoid concentrated exposure to extreme cold, humidity, hazards, and vibration. He could perform unskilled, simple, routine, repetitive tasks with no fast-paced work secondary to his pain symptoms and the side effects of his medications.

4

(AR 15). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the regional economy (defined as the lower peninsula of the State of Michigan) (AR 18-19). Specifically, plaintiff could perform the following jobs in the regional economy: addressing clerk (670 jobs); order clerk (600 jobs); and call-out clerk (360 jobs) (AR 19). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 19, 2009 (the alleged onset date) through March 25, 2011 (the date of the decision) (AR 19-20).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinions of two treating physicians, Mitchell Stuck, D.O. (primary care physician) and Vincent Prusick, M.D. (orthopedic surgeon). Plaintiff's Brief at p. 2.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a

5

claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Dr. Stuck

On November 23, 2009, Dr. Stuck completed a "Lumbar spine residual functional capacity questionnaire" (AR 384-87, 535-39).[2] Dr. Stuck had monthly contact with plaintiff since April 2009, and opined that he suffered from lumbar disc herniation, bulging disc disease, hypertension and gastroesophageal reflux disease (AR 535). These conditions resulted in an antalgic gait and palpable spasms (AR 535). Plaintiff also complained of pain, insomnia and fatigue (AR 535). The doctor stated that his diagnoses were supported by magnetic resonance imaging findings and discogram results (AR 535). In addition, Dr. Stuck identified the following objective signs of plaintiff's condition: abnormal gait; tenderness; muscle spasm; weight change; and impaired sleep (AR 536). The doctor also identified medication side effects of drowsiness due to opioids (AR 536).

Based on these conditions, the doctor opined that plaintiff had the following work restrictions: he could lift and carry less than ten pounds occasionally and up to twenty pounds rarely; he could walk one block without rest or severe pain; he did not require a cane; he could stand for 15 minutes at one time; he could sit, stand, or walk less than 2 hours of an 8-hour working day; he needed to walk every 30 minutes for three minutes each time; he needed to have the option to sit or stand at will; he needed to take 10-15 five- minute unscheduled breaks; he could occasionally twist, stoop, and climb stairs; he could rarely crouch and climb ladders; he had significant limitations in repetitive reaching, handling or fingering; and he would miss more than 4 days of work every month (AR 537-39). Notably, Dr. Stuck's opinion stated that plaintiff's impairments had neither lasted for

---

[2] The court notes that the November 23, 2009 questionnaire appears twice in the administrative record.

12 months nor were they expected to last for 12 months (AR 537). Then, in a letter dated January 11, 2011, Dr. Stuck stated that plaintiff's limitations remain the same as stated in the November 23, 2009 opinion (AR 535).

After reviewing the restrictions set forth in Dr. Stuck's opinions, the ALJ found that they were not permanent for purposes of a Social Security disability:

> [Dr. Stuck] said the claimant's impairments were not expected to last for more than 12 months (14F). This opinion was given before the claimant's surgery in February 2011 and it indicated the claimant's condition was not expected to last 12 months. The longitudinal symptomatology of record, clinical presentation of the claimant, objective signs, and laboratory findings, as well as course of and response to treatment, daily activities, absence of medication side effects, and pain control, do not, with respect to any continuous period of at least 12 months, support greater limitations than as found herein. The undersigned gives this opinion very little weight.

(AR 17).

The ALJ also found that plaintiff was able to engage in a variety of activities inconsistent with a permanent, disabling condition:

> The undersigned compared the claimant's allegations to his medical evidence that revealed the claimant was able to go deer hunting, carry and use a "muzzle loader" (13F). He was able to live independently. He could drive, shop, and fish. He did not require assistive devices to ambulate (4E). He was able to pick mushrooms in April 2010 (10F: 1). He was driving for extended times in June 2010 (11F: 1). He was walking on a trail in late 2010 when he slipped and reinjured his back (16F: 17). His doctor indicated the claimant's conditions were not expected to last 12 months (January 2011, 14F). The claimant was also able to go hunting. While Dr. Stuck later reported that the claimant's conditions remained associated with the same limitations (id. at 1), the claimant's longitudinal clinical presentation, reported symptoms, examination signs, laboratory findings, response to treatment, and daily activities do not comport with greater limitations than as found herein. Indeed, the claimant's condition is not associated with any continuous period of at least 12 months during which he was or could reasonably be expected to be unable to engage in SGA (e.g., 15F, 16F), nor do the signs and symptoms summarized on Dr. Stuck's counsel-elicited checklist form comport with the evidence of record. For example, in February 2011 the claimant reported only six months of worsening (l5F/l); the claimant was well nourished and "was able to drag a deer through the woods with a

8

> lot of exertion" (id. at 5); examination was benign (id. at 4); symptoms with improved with medication (id. at 10); there was no weakness or spasm (id. at 17); the claimant hunted more than once, was eager to go but a little worried about extensive ambulation in snow shoes, was unable to keep driving his girlfriend without a license [sic], and was merely avoiding walking up hills or overdoing it, and ADLs were tolerable (l3F/l); pain was well controlled (id. at 8); the claimant could drive with extended car rides, (11F/1); and Dr. Prusick reported benign signs and recommended aerobic activity (10 F).

(AR 17-18).

Based on this record, the ALJ provided good reasons for giving very little weight to Dr. Stuck's opinions of November 2009 and January 2011. Dr. Stuck's acknowledged that plaintiff's impairments were not permanent, i.e., the impairments had neither lasted 12 months nor were expected to last for 12 months. In addition, the ALJ found that plaintiff's daily activities were inconsistent with Dr. Stuck's extreme limitations. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (treating physician's opinion given controlling weight when well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case). Plaintiff's claim of error will be denied.

### 2. Dr. Prusick

Plaintiff contends that the ALJ failed to give controlling weight to the opinions expressed by Dr. Prusick. However, plaintiff does not discuss any such opinions issued by this doctor. Rather, plaintiff points out that Dr. Prusick performed three surgeries related to plaintiff's back pain on May 19, 2009, December 15, 2009, and February 24, 2011 (AR 317, 431, 540). Plaintiff's Brief at p. 4. The ALJ's addressed these surgeries, explaining that his RFC determination:

> was based upon the evidence that revealed the claimant had a long-standing history of low back pain status post multiple surgeries including a bilateral decompressive laminectomy L4-5 in May 2009 and fusion ofL4-SI with are-do disckectomy in

9

>December 2009 (3F, 5F, 9F,10F and 15F:4). He engaged in physical therapy and had pain management including medications and injections (4F).

(AR 16).

>The ALJ also addressed plaintiff's concerns that arose in January 2011:

>>The claimant was worried his fusion had not completely healed in January 2011. He went to the emergency room. Upon physical examination, the claimant was able to walk normally and bear his entire weight. His lumbar spine examination was grossly normal. He had full strength in his lower extremities bilaterally. His doctor advised him to avoid aggravating impact activities. MRI scans of his lumbar spine revealed a mild degree of residual epidural fibrotic change at L4-5. There was slight flattening of the ventral right aspect of the thecal sac at both L4-5 and L5-S1. After the hearing, the claimant underwent a bilateral decompressive laminectomy L3-4 with partial facetectomies and foraminatomies and a right microdiscectomy at L3-4 in February 2011 (12F, 15F, and 16F).

(AR 16).

Plaintiff has failed to identify any opinion expressed by Dr. Prusick which the ALJ either rejected or failed to give appropriate weight. Plaintiff has not presented an error for this court to review with respect to Dr. Prusick. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). Accordingly, the court considers this argument waived.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 29, 2013                                        /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge